## Lucas v. Copeland.

In debt on the record and judgment of a recovery in a sister State, a plea alleging that such judgment was entered of record by a deputy clerk, fraudulently, and by reason of a combination with the plaintiff for that purpose, is bad or demurrer, and may be stricken out on motion.

John Copeland instituted three suits of debt in the Circuit Court of Montgomery county, in 1825, to recover of Henry Lucas, on the records of three several judgments, which he had obtained against him in the Superior Court of Hancock county, in Georgia. The defendant pleaded a variety of defences. In each case a plea was filed, reciting "that the said supposed judgment and recovery was never legally obtained, but was entered of record in the.

JULY 1829.

Lucas
v.
Copeland.

said Superior Court of Hancock county, in the State of Georgia, to wit, in the county aforesaid, at the time in that behalf mentioned in the declaration of the said plaintiff, by one Rhodius Nichols, a deputy clerk of the said court, in consequence of a fradulent combination between the said Nichols and the said plaintiff, to defraud the said defendant, &c." with a verification. In one of the cases, the plaintiff demurred to this plea, and in another, moved to strike it out; and in both cases, the plaintiff, in the Court below, prevailed. Those decisions, are here by Lucas, assigned for error.

GOLDTHWAITE, for the plaintiff in error, argued that *nul tiel record* was not the only proper plea, [a] and that this plea was a sufficent bar to the action. [b]

BUGBEE, for the defendant.

By JUDGE SAFFOLD. The only ground for reversal now insisted on, is, that there was error in either striking out the plea of fraud on motion, or sustaining a demurrer to it. The obvious tendency and design of that plea was, unless it be regarded as a mere quibble in pleading, to deny the verity of the record in the sister State; to admit its existence and apparent regularity, but deny its validity; to admit the transcript of the record to be in the ordinary and legal form, that the attestation of the clerk, and the certificate of the presiding judge, were genuine, and given in the form and manner prescribed by the act of Congress, yet to insist that the judgment is spurious; that the turpitude and dexterity of a deputy clerk, has eluded the vigilance of the judge and principal clerk, or that his prowess has placed them at defiance, and enabled him to enter up a judgment, without the sanction, and against the authority of the Court.

This is truly a novel defence; yet it has been urged with abilities and ingenuity worthy a better cause. It has however, been sufficiently answered by the adverse counsel. Both sides have claimed advantage from a decision of this Court, rendered a few days since, in the case of *Hunt and Condry v. Mayfield.* [c] It is not believed that any principle recognized in that case, can afford the slightest sanction to this defence. By that decision, the doctrine was advanced, that in a case like this, the only proper general issue, is the plea of *nul tiel record;*

a 4 Cowen 480.
b 12 East 409.
13 Mass. 157.
Phil. Evid.
242. 15 Johnsons 145. 19
Johnsons 162.
2 Kent's Com
91. Cokes
Rep 73. Farmers Case. 2
Starkies evid.
Title fraud
585.

c Ante, p. 124.

but in cases where the Court had not jurisdiction over the person of the defendant, or over the subject matter of controversy, the general issue was not the only proper plea; that in such cases, or where a judgment is absolutely void, the defence may be made by a special plea in bar, or in some cases, under the general issue. The general propositions were at the same time maintained, on the authority of the Supreme Court of the Union, and in which it was said, most of the States, and even New York had nearly or entirely concurred, that judgments of a sister State should have the same *credit, validity and effect,* in every other Court in the Union, that they were entitled to in the State where rendered; that such pleas as could be there pleaded, and none others, were admissible in any other Court of the United States; and that there can be no averment in pleading against the *validity* of a record, though there may be against its operation. *a*

Then the question recurs, does not this plea directly impeach the *faith, credit* and *validity* of this record? It admits of no other interpretation, and is clearly forbidden by the Constitution of the United States, Art. 4. Sec 1. "That full faith and credit shall be given in each State, to the public acts, records and judicial proceedings of every other State; and that Congress may, by general laws, prescribe the manner in which such acts, records and judicial proceedings shall be proved, and the effect thereof;" and with the provisions of the act of Congress in pursuance thereof, passed in 1790, declaring that the record of a judgment from another State, shall have the same faith and credit in each State, that it has in the State Court in which it was rendered.

The plea must be understood as admitting the jurisdiction of the Court in Georgia, and that the process was duly served upon the defendant, as well as the apparent regularity of the proceedings, because neither is denied. If the plea could be regarded as one, amounting in substance only, to the general issue, it was equally inadmissible, as being irregular and unnecessary; and for the additional reason, that the defendant, having at the same time a formal plea of the same kind, is not permitted to encumber the record with a multiplicity of similar pleas.

It is not intended on this occasion to decide in the abstract, that in all cases where suit may be brought on a judgment from another State, the plea *per fraudem* is inadmissible; for the proposition to that extent is unnecessa-

*a* 3 Wheat 234.
4 Cowen 29 :.
1 Peters 686

ry to the decision of this case; and it is conceived impro- per to embarrass a subject of this importance, by antici- pating questions that may necessarily arise for future discussion. If it were admitted, that in a State like Penn- sylvania, where there is no special chancery jurisdic- tion, and the Courts of law must afford all the relief in any case, that can be sought from the judiciary, the *truth* of the record may be impeached by a plea at law, it does not follow that the same can be done in States which have distinct chancery jurisdiction, more adequate to investi- gate frauds, accidents, or mistakes. Or, were it admitted, that in cases where it does not appear that the defendant had notice of the pendency of the suit, or was not a party to it, but affected by it; or where the nature of the pro- ceedings was *exparte*, as in granting administration, or the like, that there, the plea *per fraudem* would be admissi- ble, these concessions would not prove that the same de- fect can be sustained where there is no question as to the jurisdiction of the Court, the parties to the suit, the appa- rent regularity of the proceedings, or their authentication. In cases of the latter description, though the matter in contest may have passed in *rem judicatem*, yet the Court may have had no jurisdiction, or it may have been *res inter alios acta*, so that the defendant had no opportuni- ty to resist the judgment or to assert his rights.

In any view that can be taken in this case, the plea is considered bad and inadmissible, and so entirely insuffi- cient, that there could be no error, either in rejecting it on motion, or overruling it on demurrer.

By JUDGE COLLIER. In the opinion of the Court just expressed, it is intimated that the judgment of a sister State, when sued on in the Court here, cannot be avoided by pleading that it was obtained by fraud, when it appears from the record, that the defendant was served with process there. With entire respect, I must be permitted to main- tain the converse of that proposition.

I grant that the judgments of the States of this Union, when sued on without the State where rendered, are entitled to a consideration in point of dignity, equally high and conclusive, as in the State from whence they are taken. A sensible and operative construction of the Constitution and act of Congress, conduce to this conclusion; and the Supreme Court of the United States, by its decision in the case of Mills v. Duryee, have put the question beyond controversy.

But neither the Constitution nor act of Congress bear on the question. It is to be settled independent of their influence, by the rules extracted from English adjudications, on the character of home judgments. These teach us, that such judgments are conclusive evidence of the verity of the facts they import. That when sued on, no defence is admissible which negatives matter intrinsic; because these matters were *res adjudicata,* and conclusively evidenced to be so, by the record. But they furnish no authority for a decision, calculated to effect such superlative injustice as that which determines that the party is also concluded as to matter extrinsic, which had not before been adjudicated. Such a decision, had one ever been made, could never have acquired the force of authority in Westminster Hall, the *rules which regulate meum and tuum, are there too well defined, and the doctrine of moral and municipal justice too well ascertained.* The true rule then is, that any matter which constitutes, if true, a good defence, and did not impugn the verity of the record, is admissible. Fraud has always been a much favored defence by the common law; such is the detestation in which that law holds it, that it declares it shall vitiate every transaction into which it enters, even the most solemn acts of the Courts of justice. *a*

The learned counsel, who argued the case of Mills v. Duryee in favor of the conclusiveness of the judgment, employs this language: "But the defendant must either distinctly deny the record, avoid it by pleading *per fraudem,* satisfaction," &c. *b* Fraud does not contradict the record; it presents to the Court new and extrinsic matter, and asks that the judgment may be annulled for that cause.

The distinction which was taken in the argument, between the right of parties and strangers, to avoid, has no foundation in sound reasoning. The stranger can avoid because he was not a party to the record, and therefore could not have defended himself against the fraud. The party had no notice of the fraud, and therefore could not have counteracted it before judgment.

Without undertaking to specify any particular fraud which would avoid a judgment, it is enough to say, that any facts and circumstances shewing that the defendant was circumvented by the employment of covinous and fraudlent means, by the plaintiff, or his agents, done with a view to gain an advantage of him, and that such advantage is gained, would render the judgment null.

JULY 1829.

Lucas
v.
Copeland.

*a* 2 Starkie 588. 1 Starkie 252. Kent's Com. 91.

*b* See also Shumway v. Stillman 4 Cowen.

JULY 1829.

Lucas
v.
Crpeland.

Can it be true, that a party against whom a judgment is fraudulently obtained, is remediless; or am I to be told that chancery extends her protecting arms to his relief? This cannot be, for that tribunal only lends her aid where the forums which administer law according to strict justice, are incompetent to give relief because of their constrained application of the general cannons of right to each particular case. Does this case form such an exception? I apprehend not. The general principles of law control the adjudication of both Courts. The powers of the two Courts, on questions of fraud, when the fraud can be discovered, are co-ordinate. If the defence be not authorized by law, equity cannot, therefore, interpose. To affirm its right to do so, supposes that chancery can administer relief where the law is deficient, by making rules for the decision of each particular case. This idea prevailed at the first institution of Courts of Equity, but has been exploded by more correct notions of jurisprudence. The idea advanced in argument, that the plea of fraud *is* tantamount to that of *nul tiel record*, and therefore demurrable, is not well founded. It might, with equal propriety be said, that the plea of fraud to debt on bond, is in effect *non est factum*, and therefore bad.

But on the sufficiency of the plea in this case, I concur in the opinion of the Court, and am therefore, for affirming the judgment.

By JUDGE PERRY. I concur in the views taken in the opinion delivered by Judge Collier.

JUDGE CRENSHAW, not sitting.

Judgment affirmed.