# MABRY, GILLER & WALKER v. HERNDON.

1. There is no inhibition in the bankrupt act of 1841, or in the relation which the State and Federal Governments bear to each other, or in the grants or restraints of power conferred upon them respectively, which deny to the State Courts the right to entertain an inquiry into the validity of a discharge and certificate upon an allegation duly interposed, that the bank-

Mabry, Giller & Walker v. Herndon.

rupt did not render a full and complete inventory of his "property, rights of property, and rights and credits," but fraudulently concealed the same.

2. *Quere?* May not the discharge and certificate of a bankrupt be impeached for fraud by one not a party to the proceedings in bankruptcy, according to the principles of the common law, without reference to the provisions of the act, and in such case is it not sufficient for the pleadings to state in what the fraud consists, without giving the formal notice which the act seems to contemplate.

3. *Semble;* A plea which merely alledges that the debt sought to be recovered is of a *fiduciary character*, is bad; because it states a legal conclusion, instead of disclosing the facts, that the Court may determine whether the debt is founded upon a trust, such as is excepted from the operation of the bankrupt act.

4. It is not an available objection on error, that notice of an intention to impeach a bankrupt's discharge and certificate, was not given until after the commencement of the term of the Court when the cause was triable; the act of Congress does not prescribe the time when the notice must be given, and if too short to allow the necessary preparation to be made for trial, a continuance should be asked.

5. Where a defendant in execution sets up his discharge and certificate as a bankrupt, by a petition, upon which a *supersedeas* is awarded, it is competent for the plaintiff to impeach the same for any of the causes provided by the act of Congress of 1841, and make up an issue to try the facts.

Writ of error to the Circuit Court of Benton.

The defendant in error presented his petition to a Judge in vacation, setting forth that a writ of *fieri facias*, (which he particularly described,) had been issued against his estate, upon a judgment recovered by the plaintiff in error, in October, 1842; that in November, 1843, he was regularly declared a bankrupt, by the District Court of the United States for the Northern District of Alabama, and thereby fully discharged from all the debts he owed previous to the 9th January, preceding, the day when he instituted proceedings in bankruptcy. Thereupon he prayed that the *fieri facias* in question might be superseded, until the term of the Circuit Court of Benton next thereafter to be holden; that then the same might be quashed, and the levy discharged. The *supersedeas* was accordingly granted.

The plaintiffs in execution gave notice in writing to the defendant, that they would impeach his certificate of final discharge in bankruptcy, for fraudulent concealment in failing to render a

full and complete inventory of his " property, rights of property, and rights and credits," pursuant to the bankrupt act of Congress, passed in 1841 ; setting out particularly the property, &c. omitted to be discovered to the District Court and submitted to its action.

The plaintiffs in execution interposed several pleas, alledging that although the defendant was the owner of the property, &c. described in the notice, previous to, and at the time when he filed his petition in bankruptcy, yet he fraudulently concealed the same, &c. *Further*, that the debt, the collection of which is sought to be enforced by the *fieri facias*, was a " fiduciary debt," and contracted by the defendant in a " fiduciary capacity."

The defendant moved the Court to strike out the pleas that had been filed to his petition to the *supersedeas;* which motion was granted, the pleas stricken out, and a judgment rendered quashing the execution at the plaintiff's costs.

T. A. WALKER, G. W. GAYLE, and J. W. PRYOR, for the plaintiffs in error. The certificate in bankruptcy is the evidence that the decree recited has been rendered by a Court of limited or special jurisdiction; and by the common law, every judgment, sentence, or decree, of a Court of general, or limited, or exclusive or concurrent jurisdiction, may be impeached for fraud, in any Court where it is attempted to be set up, by all who are injured by the fraud, and who are not parties to the judgment, &c. Whether parties to the judgment are not bound by it, so long as it stands, and can only avoid it by some direct proceeding, it is not necessary to inquire; for the plaintiffs were not parties to the proceedings in bankruptcy—not having proved their claims, &c.

It must be assumed, that the pleas interposed to the petition for the *supersedeas* are true ; that they state such a case as avoids the certificate for fraud, cannot be questioned. See Bankrupt Act of 1841, §§ 4, 5.

The bankrupt law does not expressly, nor by implicatien, deprive the State Courts of their common law right, of examining an allegation of fraud against a decree under which a certificate issues ; and there is nothing in the character of such a decree to exempt it from the ordinary objections to which other judgments are subject. No rule of policy would be opposed, nor would the harmony of conflicting jurisdictions be disturbed by the exercise of

Mabry, Giller & Walker v. Herndon.

such a power by the State Courts; and it cannot be taken away by strained construction and remote inferences.

If the decree may be attacked for fraud in the bankrupt Court, every creditor who was not a party, or if a party, has discovered fraud since the decree was rendered, must be allowed to institute his separate proceeding, for the purpose of testing its validity. And thus there would be quite as much expense and vexatious litigation, as if the right of contesting it when attempted to be set up, were conceded to all Courts, both State and Federal.

There can be no doubt but the State Courts can decide questions arising under the United States laws. [Judiciary Act of 1789, § 25, 2 vol. U. S. Laws, 65.] The fourth section of the bankrupt law of 1841, impliedly confers the jurisdiction, and the sixth section does not take it away. Suppose both parties, viz: the bankrupt and his creditor reside in the State, the latter can institute no proceeding in the Federal Courts against the former; so that if the validity of the certificate could not be tried in the State Courts, it could not be impeached. *Besides*, the State tribunals have jurisdiction over the person and property of its citizens, and it is not competent for Congress to forbid or interrupt its exercise.

The fifteenth section of the first article of the constitution of Alabama, and the eighteenth section of the same, guaranty to the citizen a remedy for every grievance, and secure to the creditor the right to arrest a debtor where there is strong presumption of fraud. This being the case, the right to sue and exhaust the remedies afforded by the State Courts cannot be taken away; although the Supreme Court of the United States may have the ultimate jurisdiction, if the subordinate tribunals decide against the validity of the proceeding under the act of Congress. In the matter of Comstock, 5 Law Rep. 163; 2 Bibb's Rep. 204.

The argument, that the defendant should be sued on the judgment against him, that he might plead his discharge, and thus test the question of fraud *vel non*, cannot be supported. Graham v. Pierson, 6 Hill's Rep. (N. Y.) 147, does not discuss the question, and, as an authority, is worth nothing. If such a suit were brought, it would be a waiver of the lien of the judgment and execution thereon (if any,) which the creditor should not be constrained to make. See Bankrupt Act, last proviso to 2d section, and Kittredge v. Emerson, 7 Law. Rep. 317.

McDougald v. Reid and Talbot, 5 Ala. Rep. 810, is unlike the present. The judgment there was subsequent to the institution of the proceeding in bankruptcy, though previous to the certificate of discharge; the petition related back to the filing of the petition, and prevented the lien of the judgment from attaching. Under our statute, the judgment creditor acquires rights which no Court can take away. [Clay's Dig. 199, § 1.] The bankrupt must avail himself of his certificate by petition for a *supersedeas,* or suit in Chancery ; and in either form of proceeding, an issue may be framed to try whether the certificate was obtained by fraud.

Fiduciary debts are excepted from the operation of the bankrupt law, and the plea alledging that fact was a sufficient answer to the petition for a *supersedeas.* In the matter of Horace Lord, 5 Law. Rep. 258 ; In the matter of George Brown, 5 Law. Rep. 121, 258 ; In the matter of Tebbetts, 4 Law Rep. 259 ; see also 5 Law. Rep 258 ; 2 How. Rep. (U. S ) 202; 5 Hill's (N. Y.) Rep. 327.

A. F. HOPKINS and W. P. CHILTON, for the defendant in error. The decree in bankruptcy is in itself a discharge of the bankrupt from his debts, whether they are reduced to judgment or not; and if a judgment has been rendered, no execution can issue thereon ; if it does issue, it is a mere nullity. [Bankrupt Act, § 4; McDougal v. Reid & Talbot, 5 Ala. Rep. 810.] The uniform practice in such cases is, to direct a perpetual stay of execution on motion. [1 Bos. & P. Rep. 426 ; 1 Cow. Rep. 42 ; Id. 44 ; Id. 165 ; 1 Caine's Rep. 249 ; 4 John. Rep. 191 ; 9 Wend. Rep. 431 ; 6 Hill's Rep. (N. Y.) 247 ; Id. 250 ; 9 Johns. 259.] If the creditor insists that the bankrupt obtained his certificate by fraud, he must institute some direct proceeding to try that question.

It is admitted that debts of a fiduciary character are excepted from the operation of the bankrupt law, and that over these the District Court had no jurisdiction. But the plea alledging that the certificate was void for that cause, was itself a mere nullity ; it did not disclose the facts which showed that such was the character of the debt; it merely affirmed a legal conclusion. A party should not be put to his demurrer to such a plea. [See 3 Stew. Rep. 172.] But if it was irregular to strike out the plea on mo-

tion, the error was repaired by giving leave to plead over, although the defendant did not avail himself of it.

The bankrupt act contemplates that the creditor shall become the actor in impeaching the certificate, not by issuing an execution, but by notice and suit; the mode adopted, (in effect,) makes the bankrupt the plaintiff, by his petition for a *supersedeas*, and denies to him the right of availing himself of his certificate, unless he shall enter into bond with surety to indemnify the plaintiff if he is unsuccessful in resisting the execution. If this be the regular course of proceeding, the bankrupt law will often fail in effecting the purpose intended, and the debtor lose the benefit of his discharge. It is no objection to this view, that the judgment and execution operate a lien upon the bankrupt's estate. The property of the bankrupt passes to the assignee, who takes it *cum onere;* the law expressly reserves the lien from the operation of the decree, and of consequence affords the means for its enforcement. As to the property on which the lien attached, the judgment remains in full force, and it may be seized under an execution; but there is no lien upon after acquired property—as to this, the judgment is wholly inoperative. [Ex parte Newall, assignee of Brown, 5 Law Rep. 306.]

There was no sufficient notice that the decree and certificate would be impeached for fraud. It was not given until three days after the commencement of the term of the Court.

The State Courts have not jurisdiction to inquire into the fact of fraud or wilful concealment by the bankrupt. If the discharge is successfully impeached, it is set aside and annulled *in toto;* whereas, if it was adjudged void by a State tribunal, such decision would affect it only in the particular case, while it would continue in force as to all other cases. The certificate it is declared, is a complete discharge of all debts proveable under the act. Now suppose a majority of the creditors were to object before the District Court, that the bankrupt had made a fraudulent conveyance, or that he had intentionally concealed a part of his property, an issue was made up and determined in favor of the latter; would not the decision conclude all creditors, whether before the Court or not, and prevent a collateral impeachment of the decree? The subject of bankruptcy is in its nature exclusive, and should not depend for the uniformity of its administration,

upon the various conflicting adjudications of different jurisdictions.

The jurisdiction of the District Court by the 6th section of the act, extends not only to creditors who prove their debts, but to those whose debts constitute present subsisting claims capable of being asserted ; and the District Courts have uniformly interposed to suspend and control proceedings in the State Courts which interfered with the administration of the bankrupt's estate. [See ex parte Winthrop, 5 Law Repo. 19-24 ; Kittredge v. Warren, 5 Law Repo. 77 ; Christie v. The City Bank of New-Orleans, 7 Law Repo. 553.] " The power both as regards the enactment of the law, and giving effect to it, belongs to the federal government exclusively." [Ex parte Bellows & Peck, 7 Law Repo. 119 ; 1 Western Law Journal, 15] In the case last cited from the seventh Law Reporter, it is said, " If the bankrupt obtains his discharge, and pleads it as a bar, and the creditor means to contest its validity, by replying fraud, or that the debt is not otherwise within the discharge, the creditor should apply to the District Court for leave to proceed in the cause, and to test the validity of the discharge by a trial in the State Court, which is granted of course, upon suitable proofs and affidavits." The District Court has plenary chancery powers to be exercised in a summary way, and may well award the issue to the law court of the State.

COLLIER, C. J.—The act of 1841, " To establish a uniform system of bankruptcy throughout the United States," invests the District Court of each District with jurisdiction in all matters and proceedings in bankruptcy, arising under that or any subsequent enactment upon the same subject ; and the District Judge may adjourn any point or question arising in such case, into the Circuit Court for the District, in his discretion, to be there heard and determined. " And the jurisdiction hereby conferred on the District Court shall extend to all cases and controversies in bankruptcy arising between the bankrupt and any creditor or creditors who shall claim any debt or demand under the bankruptcy ; to all cases and controversies between such creditor or creditors and the assignee of the estate, whether in office or removed ; to all cases and controversies between such assignee and the bankrupt, and to all acts, matters and things to be done under and in

Mabry, Giller & Walker v. Herndon.

virtue of the bankruptcy, until the final distribution and settlement of the estate of the bankrupt, and the close of the proceedings in bankruptcy."—[Sec. 6.]   By the eighth section, the Circuit Court of the District where the decree of bankruptcy is passed, is authorized to exercise concurrent jurisdiction with the District Court, of all suits at law and in equity which shall be brought by any assignee against any person claiming an adverse interest, or by such person against such assignee touching any property or rights of property of the bankrupt, "transferrable to, or vested in such assignee; and no suit at law, or in equity, shall in any case be maintainable by or against such assignee, or by or against any person claiming an adverse interest, touching the property and rights of property aforesaid, in any Court whatsoever, unless the same shall be brought within two years after the declaration and decree in bankruptcy, or after the cause of suit shall first have accrued." These are the only provisions of the act that confer or inhibit the exercise of jurisdiction, save only the authority expressly delegated to compel obedience to all orders and decrees in bankruptcy, " by process of contempt and other remedial process," and " to prescribe suitable rules, regulations and forms of proceeding in all matters of bankruptcy," &c., in advancement of the purposes for which the law was enacted.— (Sec. 6.)

The act then, does not affirmatively authorize the District or Circuit Court to entertain a direct proceeding with the view to annul the certificate of a bankrupt, and if such a power is inferrible by construction, it is certain there are no negative terms employed which inhibit any Court from considering the validity of the certificate when it is drawn in question by the pleadings. To impugn the certificate because of the fraud of the bankrupt in obtaining it, is certainly not a proceeding, case, or controversy in bankruptcy, at the suit of the bankrupt; or between himself and a creditor claiming a debt or demand *under the bankruptcy ;* or between the assignee and a creditor ; or between the assignee and the bankrupt. And with no semblance of reason can it be considered as an " act, matter, or thing to be done under and in virtue of the bankruptcy." This latter class of cases is limited in terms to matters accruing previous to " final distribution and settlement of the estate of the bankrupt, and the close of the proceedings in bankruptcy." Without more particularly noticing

the purport of the eighth section, it is quite enough to say, that it does not embrace the case of a creditor seeking to enforce by execution the collection of his judgment against a certificated bankrupt.

The fourth section of the act provides that, if a bankrupt " shall be guilty of any fraud or wilful concealment of his property or rights of property, or shall have preferred any of his creditors, contrary to the provisions of this act, or shall wilfully omit or refuse to comply with any orders or directions of such Court, or to conform to any other requisites of this act, or shall in the proceedings under this act, admit a false or fictitious debt against his estate, he shall not be entitled to any such discharge or certificate," &c. *Further*, a " discharge and certificate, when duly granted, shall in all courts of justice be deemed a full and complete discharge of all debts, contracts and other engagements of such bankrupt, which are proveable under this act, and shall be, and may be pleaded as a full and complete bar to all suits brought in any Court of judicature whatever, and the same shall be conclusive evidence of itself in favor of such bankrupt, unless the same shall be impeached for some fraud or wilful concealment by him of his property or rights of property, as aforesaid, contrary to the provisions of this act, on prior reasonable notice, specifying in writing such fraud or concealment." [See also, Eden on Bankr. 411 ; Owen on Bankr. 222 ; 5 Law Repo. 321; 6 Id. 261-272 ; 2 How. Rep. U. S. 202.] These several provisions are so perfectly clear, that it is not necessary to call to our assistance any of the rules of construction which judicial decisions have established for the interpretation of statutes. The former declares, if the " bankrupt shall be guilty of any fraud, or wilful concealment," &c., he shall not be entitled to a discharge or certificate ; while the latter provides, that a discharge, duly granted, shall, in all courts of justice be a complete discharge of all debts, &c., proveable under the act, and shall be pleaded as a bar to all suits brought, &c., unless the same may be impeached for fraud, or wilful concealment, &c. Thus we see, that although the statute contemplated a boon to the debtor, viz : a release from indebtedness, it exacted, on his part, perfect integrity, in yielding up every thing that was liable to his debts. If this was not done, but something was wilfully withheld, to which the creditors were entitled, the fact of concealment is denounced as a fraud, and upon its being made known, the Court was re-

Mabry, Giller & Walker v. Herndon.

quired to refuse its sanction to the bankrupt's discharge. And if the proceedings are formally consummated by a final decree, and a certificate consequent thereon, it is competent for any court of judicature, upon the fraud being established, to treat the certificate as a nullity. What other conclusion could be attained? The terms of that part of the act, we are now considering, are exceedingly comprehensive. It makes the discharge and certificate a complete discharge of all debts which were proveable against the bankrupt, unless the same shall be impeached, &c. The restraint upon the effect of the discharge and certificate, when superinduced by fraud, must be regarded as the antithesis of the influence accorded to them when duly granted, and is quite as potent as if the exception had been followed by an affirmative declaration of their invalidity when successfully impeached. This we think cannot be seriously questioned, nor do we understand that it has been attempted in the argument at the bar.

We cannot understand by the terms "all courts of justice," and "any court of judicature whatever," that none other than the federal courts are competent to entertain an objection to the validity of the discharge and certificate of a bankrupt. In employing words of most extensive application and import, upon an occasion when every thing said, was, or at least should have been well considered, it cannot be intended that Congress designed to convey a meaning much more limited than is expressed. The fair and natural inference is, that as the discharge and certificate, when duly granted, were effectual in all judicial tribunals, in which they should be drawn in question, so they should be invalid in every Court in which the bankrupt was sued, and relied on them as a bar, if impeachable for any one of the causes for which they are declared to be inoperative. If competent for Congress to have withheld from the State Courts the rights to examine the validity of a bankrupt's discharge for extrinsic objections, it is enough to say that this has not only not been done, but, that the power has been conferred in terms of unequivocal signification. Whether the exercise of such a jurisdiction is incompatible with the structure of the federal government. and the powers accorded to either of its departments, is an inquiry to which we may devote some consideration before we close this opinion.

It was insisted that no issue could be made up in a suit brought for the recovery of a debt, by which the validity of the bankrupt's

108

discharge could be controverted; that in order to nullify it, it must be impugned by a direct proceeding, alledging it to be obnoxious to some one of the objections prescribed by the act. This argument, we think, is clearly indefensible. It is opposed to language which is very explicit and free from ambiguity in itself. The act, we have seen, expressly authorizes the bankrupt *to plead his discharge and certificate,* and declares that when duly granted, shall they be a bar, *unless impeached for fraud, or wilful concealment, &c.* The mere fact of interposing the plea is not a conclusive bar, but it is allowable for the defendant to reply by way of avoidance, any state of facts which show that the bankrupt's discharge is impeachable. In thus placing in juxta-position the declaration as to the effect of the discharge, and allowing it to be pleaded and proved, with the denial of its efficacy when impeached, we think the reasonable inference is, that in all cases where the bankrupt relied on it as a bar, the opposite party may join issue upon its validity.

It was undeniably allowable while the proceedings in bankruptcy were *in fieri,* for the creditors of the bankrupt to object to his discharge for any one of the causes designated in the fourth section of the act, and the Court would direct an issue to be made up to try the truth of the objection, if the facts were controverted. The same section reiterates several of these objections, and we have seen, makes the discharge void, when it is impeached, and any one of them is made apparent from the proof. How can the invalidity be shown where it depends upon extrinsic facts, otherwise than by pleadings interposed according to the regular forms of proceedings, the introduction of evidence and a verdict thereupon? We cannot doubt that while it was the intention of the act to accord to the discharge, when " duly granted," all efficacy and virtue, that it has also secured to the adverse party the right to impeach it whenever it is set up as a bar to the bankrupt's liability.

It has been held that an officer arresting has no power to discharge a bankrupt, upon the mere production of his certificate, and that if he do so, the Court will not stay proceedings against him for an escape. [Sherwood v. Benson, 4 Taunt. Rep. 631.] The Court has even refused to decide upon motion the effect of a discharge under a foreign bankruptcy. [Quin v. Keefe, 2 H. Bl. Rep. 553; Pedder v. McMaster, 8 T. Rep. 609; Philpotts v.

Mabry, Giller & Walker v. Herndon.

Reed, 1 B. & B. Rep. 13; Whittingham v De La Rieu, 2 Chitty's Rep. 53 ; Earlier v. Languishe, Id. 55 ; Bampfield v. Anderson, 5 Moore's Rep. 331.] So it has been determined that the Court will not discharge without giving the party arresting, time to show that the certificate was fraudulently obtained ; and any of the reasons mentioned in the statute may be given in opposition to his discharge ; and wherever it is shown that the validity of the certificate is to be disputed, the Court will not discharge in a summary manner ; and it has, when necessary, directed the commission to be tried on a feigned issue. [Eden on Bankr. 428, and cases cited.] True, these citations are adjudicated cases upon the English bankrupt statutes, yet in principle they are strictly applicable to the effect of the certificate, as declared by the fourth section of our own act, and serve very satisfactorily to show, that it is permissible to impeach it for any of the reasons which impair its validity.

In Kittredge v. Emerson, (a case decided by the Superior Court of Judicature of New-Hampshire, in July, 1844,) the effect of the proviso of the second section of the bankrupt act of 1841, upon a lien acquired by the institution of proceedings in a State Court, was elaborately and learnedly considered. The Court there, speaking of the effect of the proceedings in bankruptcy, upon suits pending against the petitioner, remarks, that where the Court has jurisdiction of the cause and the parties, the suit will not abate because the defendant has " filed a petition in bankruptcy, nor by reason of his having obtained a certificate. That certificate must be pleaded, that its validity may, in some way, be contested. Had the plaintiff in this case replied that the certificate was fraudulently obtained, no doubt seems to be expressed in *Ex parte* Bellows & Peck, that a judgment entered upon a verdict finding such an issue in favor of the plaintiffs, would be valid and binding upon parties and privies." [4 vol. Am. L. Mag. 236-7 ; see Thompson v. Hewett, 6 Hill's Rep. 254 : Sackett v. Andross, 5 Hill's Rep. 327.]

We will now address ourselves to the consideration of the question of the power of a State Court, to inquire into the validity of the bankrupt's discharge, or rather, whether there is anything in the relation which the State and Federal Governments bear to each other, which inhibits the Courts of the former from the exercise of jurisdiction in such a case.

In the eighty-second number of the Federalist, it is said, that the only thing that has the semblance of confining causes of federal cognizance to the federal courts, is contained in the first section of the third article of the constitution, viz : " The judicial power of the United States shall be vested in one Supreme Court, and in such inferior courts as the Congress may from time to time ordain and establish." " This," says the learned author, "might either be construed to signify, that the Supreme and subordinate courts of the Union should alone have the power of deciding those causes, to which their authority is to extend, or simply to denote that the organs of the National judiciary should be one Supreme Court, and as many subordinate courts as Congress should think proper to appoint ; in other words, that the United States should exercise the judicial power with which they are to be invested through one Supreme tribunal, and a certain number of inferior ones, to be instituted by them. The first excludes, the last admits, the concurrent jurisdiction of the State tribunals: and as the first would amount to an alienation of State power, by implication, the last appears to me the most defensible construction."

But the doctrine of concurrent jurisdiction, it was supposed, was only clearly applicable to causes of which the State courts previously had cognizance. In respect to cases which grow out of, and are peculiar to the constitution, it was said not to be equally evident. *Further*, says the author just cited, "I hold, that the State courts will be divested of no part of their primitive jurisdiction, further than may relate to an appeal ; and I am even of opinion that in every case in which they were not expressly excluded by the future acts of the national legislature, they will, of course take cognizance of the causes to which those acts may give birth. The judiciary power of every government looks beyond its own local or municipal laws, and in civil cases lays hold of all subjects of litigation between parties within its jurisdiction, though the causes of dispute are relative to the laws of the most distant parts of the globe. When, in addition to this, we consider the State governments and the National government as they truly are, in the light of kindred systems, and as parts of *one whole*, the inference seems to be conclusive, that the State courts would have a concurrent jurisdiction in all cases arising under the laws of the Union, where it was not expressly prohibited."

In Hunter v. Martin, 1 Wheat. Rep. 304, it was said that the 2d section of the 3d article of the constitution, enumerated two classes of cases of which the courts of the United States are authorized to exercise jurisdiction. In the first class the expression is, that the judicial power shall extend to *all cases*; but in the subsequent part of the section, the word "*all*" is dropped, seemingly by *ex industria*. "From this difference of phraseology, perhaps a difference of constitutional intention may, with propriety, be inferred. It is hardly to be presumed that the variation in the language could have been accidental. It must have been the result of some determinate reason ; and it is not very difficult to find a reason to support the apparent change of intention. In respect to the first class, it may well have been the 'intention of the framers of the constitution imperatively to extend the judicial power, either in an original or appellate form, *to all cases;* and in the latter class to leave it to Congress to qualify the jurisdiction, original or appellate, in such manner as public policy might dictate."

Congress may permit the State courts to exercise a concurrent jurisdiction in many cases ; but those courts then derive no authority from Congress over the subject matter, but are simply left the exercise of such jurisdiction as is conferred on them by the State constitution and laws. [See Martin v. Hunter, *supra;* Houston v. Moore, 5 Wheat. Rep. 27 ; 3 Story on Cons. 613 to 626 ; 1 Kent's Com. 370 to 379 ; The United States v. Dodge, 14 Johns. Rep. 95; The United States v. Lathrop, 17 Johns. Rep. 4; The United States v. Campbell, Hall's L Journal 113 ; Sergt. Const Law, 272.]

In the exercise of the jurisdiction confided to the State courts, and those courts of the United States (where the latter have not appellate jurisdiction) it is plain, says Mr. Justice Story, that neither can have any right to interfere with, or control the operations of the other. "It has accordingly been settled, that no State court can issue an injunction upon any judgment in a court of the United States ; the latter having an exclusive authority over its own judgments and proceedings. Nor can any State court, or State legislature, annul the judgments of the courts of the United States, or destroy the rights acquired under them." [3 Story's Com. on Cons. 624-5 ; 1 Kent's Com. 1st ed. 382-7 ; McKim v. Voorhis, 7 Cranch's Rep. 279.]

We have stated the law thus at length in respect to the jurisdiction of the federal judiciary, showing in what cases those who have claimed for it the greatest potency, assert its exclusiveness. Instead of denying the right of the State tribunals to declare the discharge and certificate of a bankrupt void for any one of the reasons prescribed by the statute, the authorities very satisfactorily establish such a power.

It is undeniably competent for Congress to declare a decree in bankruptcy invalid, when irregularly or unfairly obtained, whenever and wherever it may be drawn in question; to allow it to be impeached for fraud, or other kindred cause; and upon the allegation being established, to authorize all courts to pronounce it invalid· The bankrupt act of 1841 has done this, almost *in totidem verbis*. It is true that it might not be within the legislative power of Congress to confer upon State tribunals the jurisdiction of cases in bankruptcy from their initiation to their conclusion; but if this be so, a question we need not consider, it by no means follows that the State courts should accord to the final decree and certificate consequent upon it, a conclusive verity, when Congress have declared that it shall be open to impeachment. While the proceedings in bankruptcy were *in fieri*, the case was one which grew out of an act of Congress, passed under the sanction of the constitution; but being concluded, the question is, whether the certificate can avail the bankrupt so as to bar a regular proceeding against him for the recovery of a debt. If the State courts have jurisdiction of the case, they must entertain the defence; because the right to do so, instead of being taken away, is expressly conceded by the statute, the constitutionality of which *on this point*, cannot be questioned. This can only be done so as to administer complete justice by receiving the evidence to impeach the discharge, upon an issue adapted to that purpose.

There is certainly nothing in the State or federal constitution which inhibits our courts from taking cognizance of causes in which it becomes necessary to consider the effect of an act of Congress; the more especially where Congress has not asserted an exclusive jurisdiction, and the act is invoked by the defendant. It is said, in the number of the Federalist from which we have already quoted, that the State courts, " in 'every case in which they were not expressly excluded by the future acts of the na-

tional legislature, will of course take cognizance of the causes, to which those acts may give birth." This concession is in harmony with all the citations we have made, and goes even beyond what the present case requires. It cannot then, be necessary further to amplify the point.

We have forborne to inquire whether, according to the principles of the common law, the discharge of a bankrupt can be impeached for fraud in obtaining it, when pleaded in bar to an action by one who was not a party to the proceeding in bankruptcy. See however, 13 Pick. Rep. 53; 4 Scam. Rep. 536; 3 Cranch's Rep. 300; 3 Phil. Ev. C. & H's notes, 854 to 856, 898; Story's Conf. of L. 495, 503, and cases cited in notes; 3 How. Rep. U. S. 751; 2 Stew. Rep. 151; 1 Kinne's L. Comp. 515-6; 5 Id. 117, in both of which the cases upon the point are collected. If it is competent, without reference to the provisions of the act of 1841, to impeach a certificate for fraud, is it necessary to pursue the terms of the act, or may not a plea or replication, &c, be interposed alledging the invalidity of the certificate, and particularly disclosing in what the fraud consists? The ground upon which we have rested the right of the creditor to contest the bankrupt's certificate, seems to us to be so unquestionable, that we are indisposed to inquire whether there is any other course of reasoning which leads to the same result; and the manner in which it has been done in this case is in conformity to the statute.

We are inclined to think, that the plea which alledges that the debt of the plaintiff in execution, is of a *fiduciary* character, was bad. The objection to the plea is, that it states a legal conclusion instead of specially disclosing the facts, that the court might determine whether the debt sought to be collected by execution, was founded upon a trust, such as is excepted from the operation of the act.

It is objected that notice of an intention to impeach the bankrupt's discharge was not given until the commencement of the term of the court to which the *supersedeas* was returned. Without stopping to inquire whether this be so, we are sure that it furnished no cause for the refusal to entertain the defence to the petition. The act of Congress does not prescribe any time previous to the trial within which notice must be given. If the notice was not sufficient to allow the petitioner to procure the necessa-

ry evidence to sustain his discharge, he should have applied for a continuance; which would doubtless have been accorded to him.

In Lockhart, et al. v. McElroy, 4 Ala. Rep. 572, it was determined, that an execution will be superseded upon the petition of the defendant, if an unjust or improper use is attempted to be made of it, although the execution be authorized by the judgment. This being the case, the plaintiff in execution must be permitted to controvert any material allegation of extrinsic facts contained in the petition. The petitioner, for the purpose of avoiding the effect of the judgment, and consequently perpetually superseding the execution, set up his discharge and certificate as a bankrupt. The act of Congress makes these conclusive, unless their validity shall be drawn in question for certain causes which it specifies. The defendant, by his petition, pleads his discharge in bar to proceedings on the judgment and execution; the plaintiff in execution gives the notice provided by the act, and impeaches the discharge and certificate, by admitting their existence, and affirming their invalidity. We can conceive of no objection to this course of procedure on the part of the plaintiff—it is in our judgment sustained both by the letter and spirit of the act.

The requisition of a bond with sureties, by a statute of this State, as a prerequisite to awarding a *supersedeas*, cannot in any manner affect the right of the plaintiff in execution to impeach the petitioner's discharge, any more than in another case, to show that the grounds upon which the *supersedeas* was awarded could not be supported.

If the *dictum* of Judge Story, in the matter of Bellows and Peck 7 Law Rep. 119, is to be understood as affirming that where the bankrupt pleads his discharge, the plaintiff cannot controvert its validity in a State court, without first obtaining leave of the District court, we should certainly refuse to recognize it. But we are disposed to think, that the learned Judge was speaking in reference to a case in which the plaintiff in the State tribunal had been enjoined from proceeding, by the District court, pending the proceedings in bankruptcy.

The view we have taken of this case embraces all the points now necessary to be considered. The result is, that the judgment is reversed, and the cause remanded.