# BROWN vs. THE BRANCH BANK AT MONTGOMERY.

1. If an execution is issued on a judgment after the defendant has obtained his certificate of discharge in bankruptcy, he may set it aside on motion.
2. But he cannot move to have his discharge entered of record, for the purpose of preventing the issuance of execution, before the plaintiff has sued out an execution. (CHILTON J. and LIGON, J. dissenting.)

ERROR to the Circuit Court of Montgomery.
Tried before the Hon. George D. Shortridge.

The Branch Bank at Montgomery recovered a judgment against Duncan McRae and Samuel N. Brown, in the Circuit Court of Montgomery, for two hundred and forty-five dollars.

After the recovery of the judgment Brown was declared a bankrupt, and obtained his certificate of discharge. He then moved the Circuit Court to enrol his discharge, with the view of preventing the issuance of an execution on the judgment, and showed that the debt on which the judgment was founded came within the act of Congress, and was discharged by it. The Bank resisted the motion, but did not contest the validity of the certificate. The court refused the motion, to which Brown excepted, and he now brings the case to this court by writ of error.

N. HARRIS, for plaintiff in error.

1. It is the right of a party, against whom a judgment has been rendered, from which he is afterwards discharged by matter arising subsequent to its rendition, to have his discharge entered of record, in order that he may be protected against execution on the judgment. Kemp & Buckey v. Herndon, decided at June Term, 1848, but not reported; Childs v. Franklin, 10 Ala. 81.

2. The reason of this rule is obvious. When execution issues on a judgment against a party who afterwards obtains his discharge in bankruptcy, the sheriff is bound to execute such process against the goods of the defendant. Cogburn & Powell v. Spence & Elliott, 15 Ala. 549.

JOHN A. ELMORE, contra.

DARGAN, C. J.—All the authorities, both English and American, agree, that if an execution is issued after the defendant has obtained his certificate of discharge, he may set it aside by motion. 1 Bosanquet & Puller 426; Tarleton v. Fisher, Douglas' Rep. 646; 2 W. Blackstone 1190; 7 Metc. 247; 9 John. 259; 9 Wendell 431; 6 Hill 247; McDougald v. Reid et al., 5 Ala. 810; Mabry, Giller & Walker v. Herndon, 8 Ala., 849; Cogburn & Powell v. Spence & Elliott, 15 Ala. 549. But I can find no case, except one hereafter referred to, in which the Bankrupt has moved to have his discharge entered of record, for the purpose of preventing the issuing of an execution, before one had been sued out; and to allow him to do it, before execution is issued, and whilst the creditor is passive, would enable him to become the actor,

and compel the creditor to join in a contest respecting the validity of his discharge, or to abandon his right to sue out his execution. The Bankrupt Act intended to clothe the bankrupt with a complete defence against all his debts, discharged by the act; and we shall give full effect to the act, by confining his certificate to a defence only, denying him the right to become the actor whilst the creditor is passive.

In the case of Kemp & Buckey v. Herndon, this court did sanction the practice of allowing the bankrupt to enrol his discharge upon the record, for the purpose of preventing the issuing of an execution. But on reflection we are satisfied, that the practice thus sanctioned by that case is not sanctioned by any other decisions, and will probably lead to more injury than benefit. At all events, it enables the bankrupt to become the actor, and to compel the creditor to make up an issue with him, at such time as the bankrupt may select, to test the validity of his discharge, or submit to the loss of his right to sue out execution. This, we think, ought not to be done. The creditor has the right, at any time before his demand is barred by the statute of limitations, to impeach the certificate for fraud, and he may select his own time to begin. The bankrupt has his discharge, which he may rely upon as a defence, but he should not be allowed to become the actor, whilst the creditor is taking no steps to coerce the payment of his debt. If the creditor moves, he may arrest his action by interposing his certificate, but he should not be allowed to do more .The case of Kemp & Buckey v. Herndon, which has never been reported, must be overruled; it sanctioned a novel practice, not justified by the rules of law.

Let the judgment be affirmed.

CHILTON, J.—By the fourth section of the bankrupt act, if the party seeking the benefit of the law, shall *bona fide* comply with its requirements, he is declared to be entitled to a full and complete discharge from all his debts, to be decreed by the court, and a certificate thereof is to issue to him, "which discharge and certificate, when duly granted, *shall in all courts of justice be deemed a full and complete discharge of all debts,*" &c., and "*may be pleaded as a full and complete bar to all suits whatever;* and the same shall be conclusive evidence of

itself in favor of such bankrupt, unless the same shall be impeached for some fraud, or wilful concealment of his property or rights of property," &c.

Under the operation of the above section, it is admitted by all, that judgments rendered against the bankrupt, and which do not fall within any of the exceptions contained in the statute, *are fully and completely discharged* by the decree, and the decree and certificate are not only available as a *bar* to any *suit* which might be brought upon such judments; but they are to be *deemed a discharge* in all courts of justice, whenever judicially and legally brought to their notice, unless impeached for fraud, &c.

It occurs to me, it would be productive of much hardship to require the bankrupt to give bond, with security in double the amount of the execution, which, in case he should chance to fail, is to have the force and effect of a judgment for the amount of the execution, interest and cost, however disproportioned that might be to the value of the property levied on, Clay's Digest, p. 208 ; or else, to stand by, with a valid discharge in his hand, and have his property sold, and thus be turned round to a doubtful remedy for damages, which, in many cases, might prove abortive. It is manifest, that in many cases, great injustice will be done the bankrupt, by compelling him to wait until the creditor shall overwhelm him with an execution, and that unless he can invoke the aid of the court by way of preventive justice, he will often be remediless, and his discharge fruitless and unavailing.

This consideration has induced me to look narrowly into the powers inherent in the common law courts, to ascertain whether any relief can be granted; whether it has not the power, so to control its process as to prevent it from becoming an engine of oppression, as between its own suitors; whether, in fine, it may not stay proceedings on a discharged judgment, as well as quash them after they shall have worked, in many cases, irreparable injury to the defendant. In this State, and indeed in most of the States of the Union, it is the uniform practice to grant the same relief on motion, which was formerly obtained by the writ of *audita querela.* Lockhart v. McElroy, 4 Ala. Rep. 572; Baker v. Judges of Nester, 4 Johns. Rep. 191; Smook v. Dade, 5 Ran. Rep. 639;

Longworth v. Screven, 2 Hill S. C. Rep. 298. This old writ of *audita querela* was provided by the common law as a proper remedy, where matters of discharge had arisen after judgment, and was in the nature of an equitable remedy. 1 Bacon's Abr. 307; Bla. Com., vol. 3, p. 405. It lay, not only as a remedy for relief for injuries already committed, but as a measure of preventive justice, and in many cases, the party threatened with impending and probable injury could obtain relief *audita querela quia timet*. Such was the case of Turner v. Davies, 2 Saund. Rep. 149, 150; see also Tidd's Pr. 212, 213.

In our own courts, we all know the uniform practice is, to allow a party who has paid a judgment to enter satisfaction of it upon the record, by motion to the court, and on reasonable notice to the opposite party. So, also, if two judgments are rendered on the same instrument against different individuals, and one of them be paid, satisfaction will be entered upon the other. Now, I am wholly unable to distinguish cases of this kind, where the discharge has accrued by reason of the payment of the judgment, from cases of discharge by any other means which the law allows as legal and proper. The *honest* bankrupt is as much discharged from the judgments rendered against him before his bankruptcy, as if he had paid them; and if he is *dishonest, and his discharge fraudulent*, this may be shown by the plaintiff in the judgment, to avoid or bar the entry of satisfaction, as he might show in the case of alleged payment, that it amounted to no discharge; as that it was fraudulently made in spurious currency. In each case, when relief is granted, it is predicated upon the idea that the court has the power to administer preventive justice, *quia timet*. Childs v. Franklin, 10 Ala. Rep. 79, 81.

By a recent decision in New Jersey, the Supreme Court of that State hold, that no execution can properly issue upon a judgment *prima facie* discharged by the bankrupt's certificate, and that the proper practice requires the plaintiff in the judgment, on notice to the bankrupt, to move for execution. Francis v. Ogden et al. 2 Zab. R. 210. This court has held that the execution may issue, so long as the judgment remains open, and that the discharge may be interposed as a reason why it should be superseded and quashed, at which time the

plaintiff in the judgment may make up an issue as to the validity of the discharge. Cogburn & Powell v. Spence & Elliott, 15 Ala. Rep. 549; Mabrey, Giller & Walker v. Herndon, 8 Ala. Rep. 848. I do not understand any case, however, to have gone the length of holding, that the bankrupt should wait until an execution is issued and levied, before he may move in the court in which the judgment was rendered, to stay the execution, by enrolling the certificate of discharge. Indeed, this court has expressly held the reverse in Kemp & Buckey v. Herndon, (June Term, 1848,) in which the Circuit Court of Autauga allowed the bankrupt to have entered upon its record a perpetual stay of execution, and this was held to be entirely regular by this court. I think the position I assume is not in conflict with any adjudged case of our own— is in advancement of justice, as well as sustained both by reason and authority. See 1 B. & P. 426; 1 Cow. Rep. 42, 44, 165; 1 Caine's Rep. 249; 4 John. Rep. 191; 9 Wend. 431; 6 Hill (N. Y.) Rep. 247; 9 John. Rep. 259.

With all possible respect for the opinion of a majority of the court, I feel constrained by my views of the law, and the powers of the courts to mould their practice so as to secure its proper administration, to dissent from their conclusion. There is nothing in the argument of a majority of the court, that the bankrupt should not become an actor, so as to bring on the contest, and force the judgment creditor to test the validity of his discharge before he is ready, which would not be equally applicable to all cases, where matters arising subsequent to the judgment are set up to avoid or satisfy it. Besides, the court has a discretion in all such cases, to continue the cause, and allow a reasonable time to the party seeking to contest the discharge to prepare for the contest.

LIGON, J.—Concurs in the foregoing views of my brother Chilton.